FILED
00 FEB 24 AM 9:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
Western Division

| | |
|---|---|
| ETHYLYN PUGH ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV-98-P-2771-W |
| ) | |
| BELLSOUTH ) | |
| TELECOMMUNICATIONS, INC. ) | |
| ) | |
| Defendant. ) | |

ENTERED
FEB 2 4 2000

### Opinion

Before the court is a Motion for Summary Judgment filed by Defendant Bellsouth Telecommunications, Inc. on November 1, 1999. The matter was taken under submission following the February 11, 2000 motion docket. For the reasons expressed below, Defendant's motion is due to be granted.

### I. Facts

Plaintiff Ethylyn Pugh is a black female who began working for Bellsouth upon her graduation from high school in 1969. Over her twenty-eight year employment with the Defendant, Plaintiff held many positions, including long distance operator, coin telephone clerk, engineering staff associate, and assistant staff supervisor. Beginning in 1994, Plaintiff was employed in the Interconnection Services Division of the Marketing Department of Bellsouth. In 1997, John McCain became a manager in the Interconnection Services Division and was given the responsibilities of notifying other telephone companies of changes in Bellsouth's network and coordinating the transmission of information that went into the FCC filings relating to Open Network Architecture ("ONA") requirements. To assist him in his new responsibilities, McCain requested that the Plaintiff be transferred within the department to work directly under his supervision.[1] McCain then assigned Plaintiff the tasks of restructuring the ONA responsibilities and preparing the carrier notification letters that the FCC required Bellsouth to send to other telephone companies. While Plaintiff was assigned a few other miscellaneous responsibilities, her responsibilities relating to the notification letter process eventually took up fifty percent of her time.

In August of 1997, McCain conducted an interim review of Plaintiff's performance in her new position. In this review, the Plaintiff's performance was rated as "DN," or "does not meet

---

[1]Plaintiff was chosen for this position over a white woman and was the only employee that McCain supervised during 1997 and the first quarter of 1998.



criteria," with respect her responsibilities concerning the notification letters and restructuring the ONA responsibilities. In the November following this evaluation, Plaintiff alleges that McCain set up a meeting with her to discuss her poor performance with regard to the notification letters. As the Plaintiff was walking out the door at the conclusion of this meeting, Plaintiff alleges that McCain said "some of you niggers don't understand."[2]

McCain, who denies ever making such a slur, testified that Plaintiff's performance on the notification letters and the ONA restructure remained unacceptable for the rest of 1997. He also testified that Plaintiff's performance had become so bad by December of 1997 that she was offered a lump sum payment of $28,000 in exchange for her resignation and a complete release. Plaintiff declined this offer, and in January of 1998, began performing her job under a corrective action plan developed by McCain pursuant to a Bellsouth procedure designed to enable poorly performing managers to demonstrate that they could meet a discrete set of minimum requirements for continued employment. Plaintiff was to work under this plan for the first three months of 1998. At the end of this three month period, McCain concluded that Plaintiff had failed to reach an acceptable level of performance; however, because he did note a marginal level of improvement, she was given an additional month to attain an acceptable level. When Plaintiff failed to achieve this acceptable level after her fourth month under the corrective action plan, McCain recommended to his boss that her employment be terminated. As a result, Plaintiff was fired in April of 1998. She filed an amended charge with the EEOC on May 4, 1998.

II. Claims

On November 2, 1998, Plaintiff brought this action under Title VII and Section 1981 against Defendant Bellsouth Telecommunications, alleging disparate treatment, retaliation, and racial harassment. On November 1, 1999, Bellsouth filed a Motion for Summary Judgment which is the subject of this opinion.

A. Plaintiff's Disparate Treatment Claim

Direct evidence of discrimination is "evidence, which if believed, proves the existence of a fact and issue without inference or presumption." *Rollins v. Tech South, Inc.*, 833 F.2d 1525, 1528, n.6 (11th Cir. 1987). "Only the most blatant remarks, whose intent could only be to discriminate, constitute direct evidence." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1226 (11th Cir. 1993). In the absence of direct evidence, a plaintiff may establish a prima facie case of discrimination by circumstantial evidence of discriminatory intent. *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1310 (11th Cir. 1998). In order to establish a prima facie case, a plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) similarly situated employees outside the protected class were treated more favorably; and (4) she was qualified to do the job. *Id.* Once a plaintiff has established a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment

---

[2] On January 16, 1998, Plaintiff filed a charge of discrimination with the EEOC in which she referred to this alleged racial slur and complained of general harassment by McCain.

action. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1375 (1996). If Defendant meets this "exceedingly light" burden, the burden shifts back to the plaintiff, who must then establish that the employer's articulated reasons were pretextual in order to survive summary judgment. *Id.*

In the present case, Plaintiff offers the following alleged statements by John McCain to Plaintiff as direct evidence in support of her disparate treatment claim: "Little honey, get your resume together," and "some of you niggers don't understand." Ms. Pugh testified that this latter statement was the only time that she ever heard McCain, or any other manager at Bellsouth, use a racial slur. Nevertheless, these alleged comments, even if made, do not constitute direct evidence of discriminatory intent. At best, these statements were "stray remarks" made months before the Plaintiff was terminated and unrelated to the decision making process concerning Plaintiff's employment with Bellsouth. *See Standard v. A.B.E.L. Services*, 161 F.3d 1318, 1330 (11th Cir. 1998)("remarks unrelated to the decision making process itself are not direct evidence of discrimination"); *Plaisance v. Travelers Ins.*, 880 F. Supp. 798 (N.D. Ga. 1994)(isolated use of racial slur by direct supervisor not direct evidence of discriminatory intent). Therefore, because Plaintiff has offered no direct evidence of discrimination, she must use the inferential model set forth in *McDonell Douglas Corp. v. Green,* 411 U.S. 792 (1973), in order to proceed with her disparate treatment claim.

Despite the fact that Plaintiff has offered very little evidence in this case that could serve to establish a prima facie case, the court will assume that she has made such a showing in analyzing her claim. As such, Defendant's proffered nondiscriminatory reason for Plaintiff's termination becomes the crux of the disparate treatment analysis. Defendant contends that the sole reason for Plaintiff's termination was her poor work performance. Bellsouth offered evidentiary support for this articulated reason in the form of various performance evaluations both prior to and following the institution of the corrective action plan which suggest that Plaintiff's work performance was unacceptable with respect to some of her key job responsibilities, including the preparation of notification letters. McCain testified that these notification letters were not completed in a timely manner and consistently contained grammatical errors. According to the Defendant, Plaintiff's handling of the notification letters, along with other deficient areas of her performance, led to her dismissal from Bellsouth.

Plaintiff has offered no real evidence that Defendant's articulated reason for Plaintiff's termination was pretextual. Plaintiff challenges Defendant's proffered reason by offering the testimony of Shannon Waters, a former marketing manager at Bellsouth, who testified that the Plaintiff was not responsible for the grammar in the notification letters. Nevertheless, Plaintiff acknowledged in her deposition that McCain repeatedly counseled her on grammatical errors in the notification letters. Plaintiff even testified that McCain prepared checklists for her to help her correct the errors in these letters. The corrective action plan that Plaintiff was placed under also made clear that she was ultimately responsible for the grammar in the notification letters. Considering the fact that John McCain was Plaintiff's supervisor, testimony from a former employee that Plaintiff should not have been held responsible for grammatical errors in the notification letters is not sufficient evidence of pretext in this case. Similarly, the uncorroborated allegation that McCain used a racial slur some six months prior to Plaintiff's termination is insufficient to establish that Defendant's reason was pretextual, especially considering the fact that McCain selected Plaintiff to fill the position over

a white person just over a year before she was fired. As such, because Plaintiff has failed to offer sufficient evidence that Defendant's legitimate, nondiscriminatory reason for Plaintiff's termination was pretextual, Defendant is entitled to summary judgment on Plaintiff's disparate treatment claim.

B. Plaintiff's Harassment Claim

Plaintiff also brings a racial harassment claim against Bellsouth based upon the actions of John McCain. In order to state a claim for relief under Title VII for discrimination based upon a theory of hostile work environment, a plaintiff must prove that there was conduct "severe [and] pervasive enough to create an objectively hostile or abusive work environment...." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). Relevant factors in determining whether an unlawful, hostile environment exists include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23. Following up on the Supreme Court's decision in *Harris,* the Eleventh Circuit has held that in order to establish a prima facie case of hostile work environment, a plaintiff must show that "(1) she belongs to a protective class; (2) she was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) respondeat superior." *Bivens v. Jeffers Vet Supply,* 873 F. Supp. 1500, 1507 (N.D. Ala. 1994)(citing *Henson v. Dundee,* 682 F.2d 897, 903-05 (11th Cir. 1982)).

In the present case, Plaintiff makes only vague allegations that she was the target of systematic harassment by McCain, who allegedly spoke to her in demoralizing and demeaning ways, shouted at her in front of others, failed to explain his expectations regarding her work, and told her that she did not "speak right." None of these allegations show that the alleged harassment had anything to do with Plaintiff's race. While Plaintiff has alleged one isolated comment by McCain that was race related, this mere offensive utterance was not severe and pervasive enough to create an objectively hostile work environment. As such, because Plaintiff has failed to offer sufficient evidence that she was subjected to harassment based on race or that the alleged harassment was severe or pervasive enough to create an objectively hostile work environment, Defendant is entitled to summary judgment on Plaintiff's racial harassment claim.

C. Plaintiff's Retaliation Claim

Plaintiff also alleges that Bellsouth fired her in retaliation for a charge of discrimination which she filed with the EEOC in January of 1998. To establish a prima facie case of retaliation, Plaintiff must show "(1) that she engaged in statutorily protected activity, (2) that an adverse employment action occurred, and (3) that the adverse action was causally related to the plaintiff's protected activities." *Coutu v. Martin County Bd. of County Com'rs,* 47 F.3d 1068, 1074 (11th Cir. 1995).

In the present case, Plaintiff cannot make a prima facie showing of retaliation because she cannot establish the existence of a "causal link" between the charge that she filed in January of 1998

and her termination in April of 1998.[3] The only possible relation that can be drawn between the two events from the facts in the record is based upon the suspect timing of the termination. Nevertheless, "[a] showing that adverse employment action chronologically followed the protected activity is, standing alone, insufficient to establish the requisite nexus." *EEOC v. Fuchs Baking Co.*, 43 Fair Empl. Prac. Cas. (BNA) 752, 760 (S.D. Fla. 1987). In any event, Plaintiff's employment with Bellsouth continued for over three months after the protected activity in this case. In addition, Plaintiff received unacceptable performance evaluations as far back as August of 1998 and was placed on a corrective action plan prior to filing her charge of discrimination. As such, because Plaintiff has offered insufficient evidence that her termination was causally related to her protected activities, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

### III. Conclusion

For the above reasons, Defendant's Motion for Summary Judgment is due to be granted as to all of Plaintiff's claims.

Dated: _Feb. 23_, 2000

_Judge Sam C. Pointer, Jr._

Service List:
  Leon H. Lee, Jr.
  Charles M. Thompson

---

[3] To the extent that Plaintiff bases her retaliation claim upon the internal Civil Rights charge which Plaintiff filed on November 11, 1997, her claim also fails. Plaintiff's poor performance was documented prior to this complaint and over five months passed between this filing and Plaintiff's termination.